BETHLEHEM STEEL CORPORATION, Plaintiff, *v.* TISHMAN-ADAMS, INC., *et al.*, Defendants and Counterdefendants-Appellees, Cross-Appellants.— (VULCAN MATERIALS COMPANY *et al.*, Counterplaintiffs-Appellees, Cross-Appellants.)

First District (4th Division)   No. 60976

Opinion filed February 3, 1977.

1004

Henry L. Mason, III, and Philip J. Crihfield, both of Chicago, for appellants.

Richard S. Rhodes and Juris Kins, both of Chicago, for appellee Vulcan Materials Company.

Harry M. Coven, of Chicago, for appellee Material Service Corporation.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

These appeals arise from a multiparty mechanics' lien proceeding initially commenced by Bethlehem Steel Corporation (Bethlehem) against Tishman-Adams, Inc. (Tishman), La Salle National Bank (La Salle), as trustee, Chicago Union Station Company, Penn Central Company, and Pittsburgh, Fort Wayne & Chicago Railway Company (Railroads). After the filing of the original complaint, counterclaims for mechanics' liens were also asserted by Vulcan Materials Company (Vulcan), Material Service Corporation (Material Service), and a number of other claimants. All claims except those of Vulcan and Material Service were subsequently resolved.

The defendants, Tishman and La Salle, appeal from judgments of the circuit court of Cook County, finding that the plaintiffs, Vulcan and Material Service, have valid mechanics' liens on moneys payable by Tishman to a bankrupt general contractor, Morris-Handler Company,

·Inc. (Handler). Vulcan and Material Service each cross-appealed from the judgments which found there were no valid mechanics' liens against the property on which work and materials were provided.

The issues on review are whether a written lien waiver between Tishman, as owner, and Handler, as a general contractor, was sufficient under section 21 of the Mechanics' Lien Act (Ill. Rev. Stat. 1971, ch. 82, par. 21) to waive liens on both moneys due and on the property, whether Vulcan had actual notice that no lien on property or moneys would be available before supplying labor or material, whether Vulcan is estopped to claim a mechanic's lien on moneys due or to become due when no explicit claim for such liens was asserted until after trial, and whether Vulcan and Material Service each have liens on improvements in the "space excepted" part of the construction project.

In January of 1969, Tishman and La Salle leased the air rights upon the premises of 222 South Riverside Plaza, Chicago, Illinois, from the Railroads, for the purpose of constructing a building. The lease expressly provided that every contract for labor or services in excess of $10,000 must contain a lien waiver stipulation which contained specified language.

Tishman entered into an oral agreement with Handler on September 23, 1969, to perform certain excavation, filling, grading and concrete work in connection with the construction of the building, and they also orally agreed Handler would waive all of its mechanics' lien rights on the construction project. J. Kenneth Schwartz, president of Handler, testified he understood there was to be a complete waiver of liens for all the work to be done on the project.

Handler began work on October 6, 1969, and in November of 1969, Tishman, as "Builder", and Handler, as "Contractor", executed a written contract back-dated to September 23, 1969, which contained an integration clause. That clause stated the written document was the entire contract, and it prohibited any oral modification or amendment. Simultaneously with the execution of the construction contract, in November of 1969, Tishman, as "Owner", and Handler, as "Contractor", executed a document also back-dated to September 23, 1969, entitled "Stipulation, Waiver of Rights to File Mechanics' Liens" (Waiver) which is Rider A, Appendix A to the construction contract. The Waiver, which contained language conforming to that specified in the leasehold agreement between the Railroads and Tishman, was not filed in the office of the recorder of deeds, Cook County, Illinois, until July 2, 1970.

While Tishman and Handler were discussing the details of their contract, Handler undertook to obtain Vulcan as a subcontractor. J. Kenneth Schwartz of Handler informed Carl Freeberg, general manager

of Vulcan's midwest sales division, it was to be a "no-lien" job. Schwartz testified Freeberg stated he would have to check with his office before he could agree to it. Freeberg talked to Jerry Nagel, Vulcan's midwestern division vice-president of sales, and they agreed to take the job because there had been no problem dealing with Schwartz or Handler in the past. Nagel limited his discussion to the sales office and did not discuss the job with anyone from Vulcan headquarters in Birmingham. Cyrus C. Adams, president of the midwest division of Vulcan, testified he had no knowledge it was to be a "no-lien" job. On July 15, 1970, Nagel became vice-president of Material Service, and at no time prior to or during delivery by Material Service did he see the construction contract or the Waiver.

Vulcan started to deliver materials to the project on October 27, 1969, and Material Service began delivering on January 11, 1971. Tishman terminated the contract with Handler on August 4, 1971, on account of Handler's default and inability to perform. Subsequently, Handler went into bankruptcy proceedings and is now a defunct and nonoperating company.

Both Vulcan and Material Service perfected their liens under the statute, and at an evidentiary hearing without a jury the trial court held the Waiver was sufficient to waive lien rights with respect to the premises but not with respect to moneys due. The trial court granted a lien to Vulcan in the amount of $338,859.57 and based on a subsequent motion for summary judgment, granted to Material Service a lien in the amount of $127,516.78.

The defendants first contend the Waiver agreed to by Handler was not confined to a mechanic's lien on the premises, but also extended to moneys due or to become due to Handler. The Waiver provided in relevant part:

> "Contractor does now hereby fully and completely waive and release, for himself, his heirs, successors and assignees, and for all his subcontractors and their respective subcontractors, any and all claims of, or right to, mechanic's lien, under the statutes of the State of Illinois, against, or with respect to, the above-described premises, or any portion thereof, or any improvement thereon, or with respect to the estate or interest of any person whatsoever in the said premises or improvements, or any portion thereof, or with respect to any material, fixtures, apparatus or machinery to be furnished to the said premises which claim of lien might be asserted by reason of the doing, making, or furnishing, at any time hereafter by the contractor, his successors, assignees, materialmen, subcontractors, or sub-subcontractors, of any labor, services,

material, fixtures, apparatus, machinery, improvements, repairs or alterations in connection with the above-described premises or the improvements thereon.

The contractor further agrees that upon the completion of the performance of this contract, the premises shall be delivered to Owner free and clear of any mechanics' liens, not only of the contractor but also of any and all of the subcontractors, materialmen, laborers, or sub-subcontractors who may furnish any labor, material, services, fixtures, apparatus or machinery in connection with the improvements described in this contract whether such liens relate to the above-described premises or to any moneys or other considerations which may be due at any time hereafter from Owner to the contractor, to any of the subcontractors, or to any of the sub-subcontractors."

The defendants concede there is no specific reference to mechanics' liens on moneys due in the first paragraph which sets forth the waiver, but they argue the words "any and all claims of, or right to, mechanic's lien * * * with respect to any material, fixtures, apparatus or machinery to be furnished," include all liens relating to the job. They also contend that in the next paragraph Handler's covenant to make delivery "free and clear of liens whether on the premises or on moneys or other considerations which may be due at any time hereafter," constituted a waiver of lien rights with respect to moneys due under the Act, citing *W. W. Brown Construction Co. v. Central Illinois Construction Co.* (1908), 234 Ill. 397, and *Rittenhouse & Embree Co. v. Warren Construction Co.* (1914), 264 Ill. 619.

■■ It is clear that a waiver can be executed with respect to both moneys due and the premises, or a waiver may include only the premises if the contract so provides. *Ellman v. Ianni* (1959), 21 Ill. App. 2d 353; *In re H.G. Prizant & Co.* (N.D.Ill. 1965), 257 F. Supp. 145; *North Side Sash & Door Co. v. Goldstein* (1918), 286 Ill. 209; *Douglas Lumber Co. v. Chicago Home for Incurables* (1942), 380 Ill. 87.

■■ *North Side Sash Co.* and *Douglas Lumber Co.* also stand for the proposition that a lien waiver will be limited to the express terms of the contract, and by the explicit terms of the contract in this case, paragraph one of the Waiver provides for a waiver of lien on the premises only, and paragraph two provides only for a covenant by which the contractor agrees to be liable to Tishman for damages if there should be a breach of the agreement; by its express terms it is not a waiver of lien. This construction is consistent with the fact that the Waiver signed by Tishman and Handler was the one required by the lease between the Railroads and Tishman, and it was clearly meant to protect the interests of the Railroads. The Railroads had no reason to protect themselves against liens

for moneys due. Had Tishman wanted to protect itself, it could have done so by amending the Waiver to include moneys due or by obtaining a list of subcontractors and materialmen from Handler and sending them notices by registered mail indicating that no liens would be available on either the premises or moneys due.

The cases cited by the defendants indicate that the language used in the covenant has been held to waive liens on both moneys due and the premises, but neither of those cases contained two separate and independent clauses, and neither of those cases contained a factual context similar to the instant case where the waiver language was suggested by a party (the Railroads) which had reason to protect itself against one lien but not the other.

The defendants contend that Vulcan may not recover because it was given actual notice of waiver of all liens at the time of negotiations when Vulcan sales personnel were informed of the "no-lien" aspect of the contract. Section 21 of the Mechanics' Lien Act (Ill. Rev. Stat. 1971, ch. 82, par. 21) provides that notice of a no-lien contract may be given by proof of actual notice or by proof that a waiver stipulation has been filed with the office of the recorder of deeds. That section provides in relevant part:

> "If the legal effect of any contract between the owner and contractor is that no lien or claim may be filed or maintained by any one, such provision shall be binding; but the only admissible evidence thereof as against a sub-contractor or materialman, shall be proof of actual notice thereof to him before any labor or material is furnished by him; or proof that a duly written and signed stipulation or agreement to that effect has been filed in the office of the recorder of deeds of the county or counties where the house, building or other improvement is situated, prior to the commencement of the work upon such house, building or other improvement, or within ten days after the execution of the principal contract or not less than ten days prior to the contract of the sub-contractor or materialman."

■■■ The fact that there were discussions concerning the no-lien aspect of the contract does not necessarily constitute evidence of actual notice of a complete waiver of all liens. "No-lien is a colloquial term which might refer to either a waiver of liens on both the premises and on moneys due, or it might refer to a waiver of lien on the premises only. Because the Tishman-Handler contract contained an integration clause which stated the written document was the entire contract and prohibited oral modification or amendment, the defendant cannot now rely on oral testimony that Handler agreed to a full waiver of lien with Tishman and thereby expand the express written language of Rider A, Appendix A, which expressly limited the waiver to the premises only. Consequently,

Vulcan which started work before the written document was filed, had actual notice of the lien on the premises only. Vulcan's contention that it had no actual notice because the headquarters in Birmingham had not been advised cannot be maintained in light of the fact that Mr. Nagel, who was advised of the no-lien condition, was the senior Vulcan official engaged in the negotiations with Handler on the project. There was nothing in the negotiations to alert Handler that Nagel did not have full authority to negotiate all aspects of the contract.

The defendants contend Vulcan is estopped from seeking a lien on moneys due because its complaint expressly made a claim only against the premises, and because Vulcan first argued its rights to a claim for a lien on moneys due in its post-trial memorandum. Vulcan's complaint requested *inter alia* the following relief:

> "B. That Vulcan be decreed to be entitled to a mechanic's lien with respect to the above described premises, building and all improvements thereon for the amount found to be due Vulcan;
>
> * * *
>
> G. That Vulcan may have other appropriate relief."

After the court had issued its opinion and order of the court in which it allowed a lien on moneys and not on the premises, the defendants made a motion for reconsideration in which they advanced the same arguments made here. In its answer to that motion, Vulcan made a motion to amend its pleadings to specifically request a lien on moneys due if the pleadings were deficient. The court denied the motion for reconsideration and implicitly found that Vulcan's pleadings were not deficient.

■■ The law is well settled that pleadings are to be liberally construed (*Moser Lumber, Inc. v. Morgan* (1969), 106 Ill. App. 2d 339; *Fitzgerald v. Van Buskirk* (1968), 96 Ill. App. 2d 432), and we hold that the court did not abuse its discretion in denying the defendants' motion for reconsideration.

Material Service contends the Waiver was ineffective to give constructive notice because neither La Salle, a co-owner of the leasehold, nor the Railroads signed the agreement, because there was a delay in filing the Waiver with the recorder's office, and because Tishman had entered into the agreement with Handler as "Builder" and not as "Owner" as required by the Act.

■■ Material Service does not indicate how it has been prejudiced by the failure of La Salle or the Railroads to sign the agreement, but it is clear that Material Service did have constructive notice of all the owners of the air rights and the underlying property. The Waiver filed with the recorder's office recited that the property was a leasehold owned under a lease with the Railroads and identified Tishman and La Salle as the lessees.

■■ Material Service alleges that the delay in executing the written contract and in filing the Waiver permits unequal or preferential treatment of subcontractors in violation of the spirit and intent of the Mechanics' Lien Act because those contractors who began work before the Waiver was filed would have lien rights and those who began work after it was filed would not. Section 21 of the Act states that constructive notice is effective when the Waiver is filed prior to the commencement of the work, within 10 days after the execution of the principal contract, or not less than 10 days prior to the contract of the subcontractor or materialman. In this case the defendant complied with the statute by filing notice more than 10 days prior to the contract with Material Service, and the intent of the statute does not appear to go beyond giving the contractor notice of the risks which he might incur by undertaking the work.

■■ Finally, with respect to Material Service's contention there was no argument made in the trial court that Tishman was not authorized to create agreements as "Owner" on behalf of itself and La Salle as joint venturers, and it was clearly set forth in the Waiver that Tishman was executing it as an "Owner". We find no merit in Material Service's contention.

■■ Vulcan and Material Service both contend they have liens on the "space excepted" part of the construction project. The basis of this contention is a technical discrepancy between the property descriptions in the lease and the Waiver. The property description contained in the Waiver did not include either the area below the Mezzanine level inside the building or the Plaza level outside the building, which correspond to the area below the air rights contracted for in the lease. This omission is not fatal, however, because the Waiver specifically refers to work in the areas the plaintiffs are claiming, and a reasonable construction of the documents does not support the plaintiffs' contentions. In *Llewellyn v. Board of Education* (1926), 324 Ill. 254, 258-59, the court stated:

> "The contract should be construed as a whole and not from particular phrases, and the whole instrument should be given effect, if possible. A reasonable construction should be given rather than an unreasonable one, and courts will construe a contract most equitable to the parties, which will not give one of them an unfair advantage over the other."

For these reasons the judgment of the circuit court of Cook County is affirmed.

Affirmed.

JOHNSON and STAMOS, JJ., concur.