**In re SUN AIR INTERNATIONAL, INC. d/b/a Sunair, Debtor.**

**SAUNDERS, CURTIS, GINESTRA & GORE, P.A., Plaintiff,**

v.

**A.W. BECK, Trustee, Defendant.**

**Bankruptcy No. 81–00405–BKC–JAG.**

**Adv. No. 81–0650–BKC–JAG–A.**

United States Bankruptcy Court, S.D. Florida.

Oct. 27, 1982.

---

Robert G. Hewitt, Harper & Hewitt, Miami, Fla., Christine Hall Larson, Saunders, Curtis, Ginestra & Gore, P.A., Fort Lauderdale, Fla., for plaintiff.

Britton, Cohen, Kaufman, Benson & Schantz, Fort Lauderdale, Fla., for trustee.

## FINDINGS AND CONCLUSIONS

JOSEPH A. GASSEN, Bankruptcy Judge.

The complaint for turnover of Saunders, Curtis, Ginestra & Gore, P.A. came on for hearing on February 1, 1982, on certain legal issues. The court on March 26, 1982 entered an order setting a further evidentiary hearing combined with a hearing on a petition for fees in the main proceeding (C.P. No. 7).

Plaintiff was attorney for the debtor, Sun Air, at the time its voluntary petition under chapter 11 was filed on March 24, 1981. Prior to that filing plaintiff had entered into an agreement with the debtor, receiving $3,750 as a non-refundable retainer. In addition, Sun Air assigned to plaintiff the first $10,000 of an account receivable from the U.S. Navy, in payment of legal services to be rendered in the case. The debtor's bankruptcy proceeding was subsequently converted from chapter 11 to chapter 7, and a trustee was appointed on August 3, 1981. On August 7, 1981, the United States issued a check payable to the debtor in the amount of $14,327.32, in payment of the account receivable which had been partially assigned to plaintiff. Plaintiff made demand on the trustee and when he refused to deliver the $10,000, plaintiff filed its complaint.

Defendant (trustee) admitted the facts upon which the complaint is based, but denied that the $10,000 was not property of the estate, and raised affirmative defenses.

 The first issue to be decided is whether or not the assignment was required to be perfected by the filing of the financing statement for it to be effective against the trustee. Article 9 of the Uniform Commercial Code, Secured Transactions, also applies to the assignment of accounts receivable. Section 679.102(1)(a)(b), Fla.Stats., provides that this chapter applies to "any sale of accounts" except as excluded in § 679.104(6). That section provides that this chapter does not apply:

> To a sale of accounts or chattel paper as part of a sale of the business out of which they arose, or an assignment of accounts or chattel paper which is for the purpose of collection only, or a transfer of a right to payment under a contract to an assignee who is also to do the performance under the contract or a transfer of a single account to an assignee in whole or partial satisfaction of a preexisting indebtedness;

Plaintiff argues that the assignment of account receivable here was not intended as a financing arrangement and therefore does not come under Chapter 679. The court concludes that it *was* a financing arrangement for the payment of attorneys fees, and even if it were not, the Uniform Commercial Code was not intended to be applied only to transactions intended for security. The drafters' comments to the 1966 amendments to the Uniform Commercial Code under § 9–102 state:

> The main purpose of this Section is to bring all consensual security interests in personal property and fixtures under this Article.... In addition certain sales of accounts, contract rights and chattel paper are brought within this Article to avoid difficult problems of distinguishing between transactions intended for security and those not so intended.... 1. *Except* for sales of accounts, contract rights and chattel paper, the principal test whether a transaction comes under this Article is: Is the transaction intended to have effect as security? (Emphasis added).

Neither do the exceptions of § 679.104(6) apply here. Although it was a transfer only of a part of single account, the transfer was not in satisfaction of a pre-existing indebtedness.

Even if a transaction is not excluded from Chapter 679, it may be one for which the filing of a financing statement is not necessary for perfection. Excluded from the filing requirement under § 679.302(1)(e) is "An assignment of accounts which does not alone or in conjunction with other assignments to the same assignee transfer a significant part of the outstanding accounts of the assignor."

 The assignment was made three days before debtor's chapter 11 petition was filed. The accounts receivable shown on the debtor's schedules numbered 28 and the total amount was $67,143.92. (Plaintiff's Exhibit No. 2). The $10,000 assignment was approximately 14% of this total. The trustee argues that the court must consider the collectibility of debtor's accounts to decide whether or not the assignment was "a significant part" of the total, but cites no authority for that interpretation of § 679.-302(1)(e). The debtor's office manager testified and identified which accounts were actually paid, as best she could remember. This however, is not direct evidence of which accounts would have been considered collectible at the time of the assignment. On these facts the court concludes that the assignment in question was not a significant part of the debtor's total accounts receivable. Therefore the transaction was excluded from the requirement of filing a financing statement. Cf. *In re K & G Health Care Ind.,* 28 U.C.C.Reptg.Serv. (Callahan) 837 (Bkcy.Ct.S.D.Fla.1979); *Davidson v. Union National Bank, In re B. Hollis Knight Co.,* 461 F.Supp. 1213 (E.D. Ark.1978); *Abramson v. Printer's Bindery, Inc.,* 440 S.W.2d 326 (Tex.Civ.App.1969); *Architectural Woods, Inc. v. Washington,* 88 Wash.2d 406, 562 P.2d 248 (1977).

The trustee has also asserted the affirmative defense that such payment would be excessive for services rendered by the debtor's attorney. In response to the court's order of March 26, 1982, plaintiff filed an application for allowance of interim compensation in the main proceeding, attaching records of the time expended (C.P. No. 104, Case No. 81–00405–BKC–JAG) and Christine Hall Larson testified at the hearing on May 10, 1982. In view of the urgent nature of the original filing, the disagreements among the principals of the debtor, and the work required prior to making the determination that the company could not be reorganized, the court concludes that the payment of the $10,000 in addition to the nonrefundable retainer is not excessive. The trustee will therefore be required to turn over these funds to the plaintiff.

Pursuant to B.R. 921(a), a separate Final Judgment is being entered this date.