### In re RALLS & ASSOCIATES, INC., Debtor.

### RALLS & ASSOCIATES, INC. and United States, Plaintiffs,

v.

### AMERICAN NATIONAL BANK & TRUST COMPANY OF SHAWNEE, Defendants.

**Bankruptcy No. 89–1365–BH.
Adv. No. 89–400.**

United States Bankruptcy Court, W.D. Oklahoma.

May 2, 1990.

Vernon D. Hyde, Oklahoma City, Okl., for debtor/plaintiff.

John L. Simpson, Sp. Asst. U.S. Atty., Tax Div., I.R.S., Oklahoma City, Okl., for plaintiffs.

Karen Henson, of Henson, Henson, Henson & Marshall, Shawnee, Okl., for defendants.

## ORDER REGARDING MOTION FOR SUMMARY JUDGMENT

RICHARD L. BOHANON, Bankruptcy Judge.

This is an action to determine the priority of liens on debtor's accounts receivable. The debtor's petition lists accounts receivable of $9,992.30 as of the date of bankruptcy on March 2, 1989. Plaintiffs, debtor and the United States (on behalf of the Internal Revenue Service), have moved for summary judgment.

Defendant, American National Bank and Trust Company of Shawnee, asserts a lien on the accounts receivable pursuant to a security agreement with debtor of April 11, 1986. The agreement granted defendant a security interest in "all accounts and contract rights now owned or hereafter acquired by debtor".

The Internal Revenue Service asserts a tax lien on the same accounts receivable. On August 1, 1988, September 19, 1988, and November 21, 1988 the IRS filed Notices of Federal Tax Lien. Under 26 U.S.C. § 6321 the IRS is granted a broad lien "upon all property and rights to property, whether real or personal" of the taxpayer.

The priority of the tax lien over competing liens is governed by federal law.[1] The general rule that first in time is first in right applies.[2] The priority of the tax lien is based upon the date on which notice of the tax lien was given, regardless of when the tax lien actually attaches to after acquired property.[3] The priority of the private lien is based upon when it attaches or becomes *choate*.[4] Thus, the tax

---

1. *Aquilino v. United States,* 363 U.S. 509, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960).

2. *United States v. New Britain,* 347 U.S. 81, 85–86, 74 S.Ct. 367, 370, 98 L.Ed. 520 (1954).

3. *United States v. Pioneer American Ins. Co.,* 374 U.S. 84, 88, 83 S.Ct. 1651, 1654, 10 L.Ed.2d 770 (1963).

4. *U.S. v. Pioneer,* at 88, 83 S.Ct. at 1654.

lien will be superior as long as notice was filed while the private lien was inchoate (i.e. where the security interest has not been fully perfected and attached).

In certain circumstances 26 U.S.C. § 6323 provides protection to a private lien even though it is not choate. In particular § 6323 protects security interests in "qualified property" granted through a "commercial transactions financing agreement" which are "protected under local law against a judgment lien arising, as of the time of tax lien filing, out of an unsecured obligation".[5]

■ There is no dispute that the Bank has a commercial transactions financing agreement which falls within the terms of the statute, and that the Bank would be protected under local law against a judgment lien arising from an unsecured obligation. The only dispute is whether the accounts receivable existing at the time the bankruptcy was filed are "qualified property".

"Qualified property" includes only "commercial financing security" (which includes accounts receivable) which was "acquired by the taxpayer before the 46th day after the date of the tax lien filing."[6]

The narrow issue here is when the accounts receivable were acquired by the taxpayer. The $9,992.30 of receivables listed on the date of bankruptcy were invoiced on or after February 19, 1990 more than 45 days after the last notice of tax lien filed by the IRS on November 21, 1988. It appears the receivables were not acquired by the taxpayer until too late, and are not "qualified property".

The requirement that the collateral must have been acquired by the taxpayer mirrors the state law requirement that in order for a security interest to attach the debtor must have rights in the collateral.[7] The debtor has no rights in an "account" until it comes into existence.[8] The accounts receivable in this case fall within the definition of "account".[9] A security interest may be granted in after-acquired property.[10] Nevertheless, that security interest cannot attach until there is something for it to attach to.[11]

A case closely parallel to ours is *Texas Oil & Gas Corp. v. United States.*[12] In *Texas Oil* the court found accounts receivable had not been "acquired" by the taxpayer and noted:

"The most substantial present interest that the bank could claim in the accounts receivable at the time of the tax lien filing or within 45 days thereafter was that of a 'general intangible.' (citation omitted). But the legislative history ... expressly excludes 'general intangibles' from classification as 'qualified property' ..."[13]

The Tenth Circuit has also recognized the necessity that debtor have rights in the collateral within the 45 day period.[14] In *Donald* the collateral was finished goods, which were not completely finished at the end of the 45 day period. The Tenth Circuit held that the private lien was inferior as to any value added to the collateral after the 45 day period.[15]

The Bank still urges that the debtor had rights in the accounts receivable citing three cases. *Centex Constr. Co. v. Kennedy,* 332 F.Supp 1213 (S.D.Tex.1971); *Manalis Finance Co. v. United States,* 442 F.Supp. 579 (C.D.Cal.1977); *Standard Lumber Co. v. Chamber Frames, Inc.,* 317 F.Supp. 837 (E.D.Ark.1970). These cases

5. Section 6323(c)(1).

6. Section 6323(c)(2)(B) & (C).

7. 12A O.S. § 9–203(1)(c).

8. 12A O.S. § 9–204(2)(d).

9. 12A O.S. § 9–106.

10. 12A O.S. § 9–204(3).

11. 12A O.S. § 9–204(1), see also *Donald v. Madison Industries, Inc.,* 483 F.2d 837 (10th Cir.1973).

12. *Texas Oil & Gas Corp. v. United States,* 466 F.2d 1040 (5th Cir.1972).

13. *Texas Oil,* at 1051.

14. *Donald v. Madison Industries, Inc., supra.*

15. *Donald, supra* at 845.

are distinguishable. In *Centex* the court dealt with contract rights. The contract existed prior to the expiration of the 45 day period. The court specifically distinguished another case dealing with accounts receivable.[16] Similarly in *Standard Lumber* the accounts receivable assigned existed at the time the security interest was given and prior to the expiration of 45 days after the tax lien filing. In *Manalis* no challenge to the existence of the property was ever made by the IRS.

If the accounts receivable had arisen from a contract between debtor and its customers which existed before the end of the 45 day period then there might be rights in existence.[17] There is no evidence of such a contract in this case. 45 days after the filing of the tax lien in this case, all the debtor had was prospective accounts receivable, prospective contract rights. Nothing was in existence for the lien of the Bank to attach to. The Bank does not fall within the protection afforded by § 6323(c). Absent this protection the general rule applies. The tax lien has priority since notice was filed before the Bank's security interest had attached to this collateral.

Accordingly, summary judgment is granted in favor the plaintiffs. The IRS has a superior lien to the Bank on accounts receivable existing on the date of bankruptcy and subsequently coming into existence.

---

**16.** *Centex,* at 1215. In addressing *Continental Finance, Inc. v. Cambridge Lee Metal Co.,* 56 N.J. 148, 265 A.2d 536 (1970) the court notes that although that court found the federal lien had priority "it seems clear from the opinion that Continental Finance did not, in trying to fix a security interest in the future accounts receivable, treat them as 'contract rights' under the Uniform Commercial Code."

**17.** *In re National Financial Alternatives, Inc.,* 96 B.R. 844 (Bankr.N.D.Ill.1989).